The COURT was of opinion qn the first question, that the'complainants ought to resort in the first instance, to a sujt at law? 0n the administration bond, to make defendant liable as surety in that bond; but delivered no formal written opinion. On the rest of the cáse, Chancellor Jakes delivered the deeree of the court.
After the decision already made by the court, that the complainants' must resort to'a suit at law upon the admin-istratioñ bond, the only questions that remain for our de-cisión are:
1st. Whether the defendant is not bound by his acknowledgment to Dr. Chichester, and his admission in his answer, that he had saved six or seven thousand dóllárs for the estate of Bague ? And whether it is not probable that he could have had no other debt but the one due from Clarkson to that estate ip contemplation at the time of such acknowledgment ?
2. Whether at the time the debt due from Clarkson to the estate of Bague was settled with Blacklock & Bower, it was not in the knowledge of one or both of the latter, that Gairdner was insolvent, and if so, whether such settlement was not a legal fraud, and as such must 'be set aside ? ' " ' ■
Upon the first question of defendant’s acknowledgment to Dr. Chichester, the latter states in' his evidence, “ that on the 3d'or 4th January, 1803, he waited on the' defendant in consequence of. a letter he had received about that time from Robert W. Powell, the friend of. the complainants, dated London 30th October, 1802, and read to him, the defendant, the said letter, upon which he then said to this examinant, that he the defendant had known for 12 months before, that Gairdner never would remit 'a shilling to Mrs. Bague, but that in consequence of his being Gairdner’s surety, he had' saved about six or seven thousand dollars for the estate of Bague, and had *613 taken a certain trunk containing the papers relating to tbe estate, from Gardner; and which sum (he added) had it not been for his, the defendants interference, woulcl have been lost;” and he made a merit of having saved sp much. And this examinant took a memorandum of the, con ver-sation, and on the same day he wrote to Mr. Powell, that so much money “ had been secured by the said defendant.” Thus far goes the testimony of Dr. Chichester as to the acknowledgment of defendant; and although it has been attempted to shake or to ■ weaken this evidence by that of Mr. Robertson, yet it appears that this has not been done; the latter deposes, “ that in the beginning of November, 1802, he was present in defendant’s -store, when Dr. Chichester came in and took a letter out of his pocket, and said it was from Mr. Powell, and asked the defendant if he would pay the' money to Bague’s estate. That defendant said he had no money for that estate; that he had repeatedly, told him so; and that he was surprized he should ask him for it.”
Upon a cross examination, Mr. Robertson does not appear certain as to. the. time of said conversation, but says, 54 he thinks if took place about the time of Gairdnef’s bankruptcy,’.’ which it appear? by the answer of defendant was on the 6th November, 1802. But the letter of Mr. Powell, to which-both Witnesses have referred in their evidence, being dated, London, the. 80th October, 1802, could not possibly have been produced at Mr. Blacklock’s store, in Charleston, about the beginning of November, in the same year. Dr. Chichester also swears positively as to the time, and produces the letter with a memoran dum he made upon it, of the substance of the conversation at the time, and likewise when he answered it, viz. on the 4th January, 1803, to shew the correctness of his testimony. Now the evidence of both these gentlemen being unimpeached, but the one being positive, and the other not, it is clear, that by the well know rule of evidence, the court must rely upon that which is positive. Besides, as Mr. Robertson has stafed that defendant said, “ I *614 have repeatedly told you I have no money of the estate of Baguefrom his using the word, repeatedly, it becomes evident that this was not the first, but some subsequent conversation upon that subject. Again, Mr. Black-l°ch in his answer has admitted, “ that he may have told Dr. Chichester that a sum was secured from Gairdner for Bague’s estate, but he afterwards apprized Dr. Chiches-ter of his mistake,” which admission in the answer still further confirms the testimony of the Doctor, and shews that Mr. Robertson must have heard some subsequent, and not a first conversation. But the point being- thus established that the defendant in a first conversation with Dr. Chichester, a person authorized to call him to account, has acknowledged that he had saved 6 or gfOOO for the estate of Bague, in the opinion of the court, there can be little doubt of the effect of such acknowledgment; more especially when it comes to be coupled with other circumstances. These circumstances are to be found in' the testimony of Mr. Clarkson, the further testimony of Mr. Robertson, and admissions of the defendant. Mr. Clarkson deposes, “ that he as the surviving partner of Brown, Clarkson, & Co. was indebted to complainants; that Gairdner as their attorney, threatened to sue him,” but after several conversations on the subject, he at length said,- “ that he, Gairdner, was indebted to Bower., and if Clarkson would settle the matter with Bower, it would be the same thing.” That Bower was then the copartner of Blacklock.
That witness still hesitated about the proposal, but having made terms with Bower, that he should draw notes not negotiable in favor of Blacklock & Bower, and that he should not be sued till he could recover from Brown’s estate, the witness finally settled the debt due to the complainants with Bower, by giving two notes to Black-lock & Bower, the first dated the 18th September, 1802, for g 500, and the second, on the 20th of the same month, but neither of them negotiable; and also by discounting *615 $ 1500 with Gairdner, for notes endorsed by witness for him.
That Gairdner then gave witness a receipt in full of the latter date, but no money was actually paid; Such is the evidence of Mr. Clarkson : and Mr. Robertson has stated, “ that he- was present, and saw the trunk opened, which was sent frorii Gairdner to Blacklock, and that there was no paper of value in it, and nothing in fact but old letters, and accounts current;’'
Defendant has admitted in his answer, “ that these notes have come into his hands since the dissolution of the copartnership of Blacklock & Bower; but that he never-received from Clarkson any money, which he should have paid to Gairdner : he also states that the trunk contained not a single paper worth a shilling.” Now from the whole Of the above evidence, it is to be collected that Bower, the partner of Blacklock, and for whose acts he is liable, settled á debt with Clarkson, which' of right, belonged to the estate of Bague, and for which that estate has received no valuable consideration. That after the said debt was thus settled, Gairdner did indeed give a receipt in full, but it was a business of accommodation all round. That these notes taken together, amount to $ 5650, and that defendant never had in possession, neither from what papers were contained in the trunk, nor otherwise, any debts or specialties of the estate of Bague; and yet upon a conversation with Dr. Chichester, after the said settlement, he acknowledged that he had saved six or seven thousand dollars for that estate. From all which parts of the evidence thus collected, it appears evidently that in the acknowledgment to Dr. Chichester, the defendant had in contemplation this debt of $ 3630, nearly equal to $ 6000, and no other. Under all these circumstances of the case, therefore, the court will consider him as bound by his said first acknowledgment, so far as to oblige him to deliver up those notes to the complainants ; and as to his subsequent statement, “ that he had made a mistake,” we can only view it as an after thought. Consequently the case *616 being decided against the defendant on the first ground^ it will be unnecessary to travel into the second.
Therefore, let the defendant deliver up the two notes in question to the complainants, dr their attorney, and let hiih pay the costs of this suit.